**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1219

September Term, 2015

_____

TIMOTHY ALAN MOATS

v.

STATE OF MARYLAND

_____

Krauser, C.J.,
Berger,
Leahy,

JJ.

_____

Opinion by Berger, J.

_____

Filed: October 25, 2016

On July 23, 2015, Timothy Alan Moats ("Moats"), appellant, was convicted in the Circuit Court for Garrett County of one count of possession of child pornography based on an agreed statement of facts. Moats was subsequently sentenced to serve eighteen months of incarceration with all but the time he had already served suspended. Moats was placed on supervised probation for two years and was required to register as a sexual offender. In his timely filed appeal, Moats raises two questions for our consideration, which we have consolidated and restated as follows:[1]

> Did the circuit court err in denying appellant's pre-trial motion to suppress evidence?

Discerning no error or abuse of discretion, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

One night in early January of 2015, Moats and three other teenagers were riding around Garrett County in Moats's car. During the drive, Moats, then age eighteen, provided marijuana and suboxone, an addictive prescription medication used to treat opioid

---

[1] The questions as presented by Moats's are:

    I.    Does an affiant's assertion that "individuals who participate in [sex or drug] crimes communicate via cellular telephones, via text messages, calls, e-mails etc.," without more, provide a substantial basis to issue a search warrant for a cell phone?

    II.   When a trial court applies an incorrect legal standard to a motion to suppress evidence in a criminal case, is a limited remand warranted so that the correct standard can be applied?

addiction, to the other teenagers. Moats, along with the three other teenagers, went to a party where one of them, A.D.C., then age seventeen, was sexually assaulted.

About two-weeks later, A.D.C. reported the sexual assault to the police. In the course of investigating the sexual assault, Sergeant Robert A. Zimmerman of the Garrett County Sheriff's Office interviewed Moats. Moats admitted that he distributed marijuana and suboxone to the other teenagers who were riding in his car on the relevant night in January of 2015, but denied any involvement in the sexual assault of A.D.C. Moats's admissions were corroborated by the statements the other teenagers made to the police.

On January 23, 2015, the police sought and obtained a warrant for Moats's arrest on charges related to his distribution of drugs. Moats was arrested and transported to the Garrett County Jail. The arresting officer conducted a search of Moats's person incident to his arrest and found his cellular phone. After it was seized, the phone was stored in the Sheriff's Office. On January 24, 2015, Moats was released from the detention center. The Sheriff's Office retained his cell phone, however, believing that it might contain evidence related to Moats's distribution of drugs and the sexual assault of A.D.C.

On January 26, 2015, Sergeant Zimmerman applied for a warrant to search Moats's phone for evidence related to the drug offenses and the sexual assault of A.D.C. The affidavit in support of the application provided, in pertinent part:

> On January 21, 2015 your Affiant responded to Garrett Memorial Hospital and met with complainant [A.D.C.], 17 years of age. [A.D.C.] stated approximately 2 weeks ago she was in a vehicle with Timothy "Timmy" Moats, [T.B.], and a white male only known as "[C.]." The four of them drove around the Oakland, Mt Lake Park and Pleasant Valley areas of Garrett County. While out riding around, they stopped and

2

Timmy provided each of them with suboxone. Timmy crushed the suboxone and snorted it with a dollar bill. He then passed it around and provided it to all the individuals in the vehicle, all of them except Timmy are under the age of 18. She then stated they ended up at a party where she was sexually assaulted. She cannot remember where the party was at and does not know who sexually assaulted her. She said she was "high" from the drugs used, that were provided to her by Timmy and mentioned that at some point she used heroin as well.

On January 23, 2015, your Affiant interviewed Timothy Moats. Timothy admitted that he was with all of the above listed individuals a few weeks ago and identified [C.] as [C.O.]. He further stated that they were all out riding around and he did in fact bring with him suboxone and marijuana. He said that he crushed the suboxone on a CD case using a lighter and snorted it with a dollar bill. He then provided the suboxone to all the individuals in the vehicle. Furthermore, he admitted to smoking marijuana, bringing it with him and providing it to all the individuals in the vehicle. Timothy denied any knowledge and/or involvement with the sexual assault.

Your Affiant then interviewed [C.O.] and [T.B.]. Both provided the same information as listed above regarding the use and distribution of CDS. They also denied any involvement with the sexual assault, only stating that when [A.D.C.] got into the vehicle with them she said that she was sexually assaulted the night before at a party.

Your Affiant then spoke with [R.W.]. [A.D.C.] stated she had told [R.] about the sexual assault. [R.] stated that [A.D.C.] told him she was with the above listed individuals, and [T.] and Timmy got her "high" and shot her up with heroin. He stated that she was later sexually assaulted, and he believes that [T.] and/or Timmy have knowledge and/or are involved. He stated that he saw marks and injuries on [A.D.C.] after the incident, which was not reported at the time.

Your Affiant knows through his training and experience as a Criminal Investigator that individuals who participate in such crimes communicate via cellular telephones, via text messages, calls, e-mails etc.

3

> Your Affiant avers, based on the information received from the aforementioned sources, your Affiant's observations, training, knowledge and expertise as a member of the Garrett County Sheriff's Office, Criminal Investigation Division, that there is probable cause to believe and does believe, that evidence of violations of the laws relating to Sexual Offense and related crimes, as well as the Possession and Distribution of controlled Dangerous Substances as herein before cited, is contained in and upon the aforementioned cellular telephone.

A district court judge approved the application and issued the search warrant authorizing the police to search the electronic data contained in Moats's cellular phone. In the course of the search, the officers discovered sexually explicit photos and a video of a young woman that had been saved on the cellular phone. The officers later identified the young woman in the photos and video as Moats's then fifteen-year-old girlfriend.

On March 10, 2015, Moats was charged with three counts related to his possession of child pornography and one count of second degree assault. Prior to trial, defense counsel filed a motion to suppress the photos and videos recovered from Moats's cellular phone, arguing, in part, that the search warrant was not supported by sufficient facts to establish probable cause. Following a hearing on June 18, 2015, the trial court denied the defense motion to suppress, reasoning:

> The purpose of this hearing is to determine whether this evidence is admissible in court and the standard to be used at this hearing is to look at all the facts and circumstances in the light most favorable to the State. The burden is not as high as the burden of proof in proving criminal guilt or innocence.
>
> *     *     *
>
> . . . Mr. Moats was arrested on January 23, 2015. As part of that procedure of arrest, he is taken into custody. He is

4

searched. His personal property is confiscated, and he's put into a jail cell.

The next day he was released, and his phone was not released to him. I think that to try and make this analogous to a case with a firearm does not really carry a lot of weight here. In addition to that, trying to make this analogous to a search of a home, which is really just a storage repository, the home itself wouldn't be evidence; it would be what you could find in that home. That's not the case with a cell phone.

A cell phone is a portable items [*sic*]. It's something that we have to take recognition in the 21st Century in our lives today, it's an integral part of how many of us live. Certainly, the younger you are, it seems it becomes an even more integral part. It's probably not as important to me, since I'm older, but I think to a lot of young people, it would be very hard to live without it, and it's something that becomes part of their lifestyle.

In looking at the search warrant that was issued on the January 26th, and I think Defense Counsel has even alluded to it, that the affiant, through his training and experience as a criminal investigator, that individuals who participate in such crimes, typically drug crimes – at January 26th, we're talking about drug activity, because that's what he had been arrested for --- that people who participate in such crimes typically communicate via cellular phone, text messages, calls, e-mails, et cetera. And I think that while that may not always be an accurate statement, I think that it does show that the person submitting the search warrant, Sergeant Zimmerman, was acting in good faith. There was no bad faith here in asking for this search warrant, that the search warrant application was submitted in good faith.

And, in addition, in reviewing the search warrant that was signed by Judge Stephan Moylan, in reviewing that, it – if I can find it here, it specifically indicates that the phone can be searched for evidence of drug or sexual crime violations. It's not a general warrant. It doesn't say just take Mr. Moats' phone and look at it and see what you can find. The warrant that was signed by Judge Moylan is specific to looking for evidence of crimes of drug activity, illicit drug activity, or

5

sexual offenses. So, I think that the search warrant application and the search warrant of January 26th was valid.

On July 23, 2015, Moats agreed to plead not guilty to an agreed statement of facts on one count of possession of child pornography. As part of the agreement, all other charges pending against Moats, including the drug charges, were dropped. The court found Moats guilty and sentenced him to eighteen months of incarceration, suspending all but the time he had already served. Moats was ordered to serve two years of supervised probation and was required to register as a sexual offender. Moats noted a timely appeal on July 30, 2015.

## ANALYSIS

Moats contends that the circuit court erred in denying his motion to suppress the photographs and videos of his teenage girlfriend that were saved on his cellular phone. Specifically, Moats asserts that the court erred by concluding that the warrantless seizure of his phone after he was released from jail following his initial arrest on drug charges was legal. Moats further contends that the court erred when it upheld the validity of the search warrant for his phone, "because the application for the warrant did not provide any nexus between the alleged criminal activity and the phone." Moats also questions whether the suppression court utilized the correct standard of review in assessing the merits of his pre-trial motion to suppress.

The standard of review for motions to suppress is well-established:

> Our review of a circuit court's denial of a motion to suppress evidence under the Fourth Amendment, ordinarily, is limited to the information contained in the record of the suppression hearing and not the record of the trial. When there is a denial

6

of a motion to suppress, we are further limited to considering facts in the light most favorable to the State as the prevailing party on the motion. Even so, we review legal questions *de novo*, and where, as here, a party has raised a constitutional challenge to a search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case. We will not disturb the [circuit] court's factual findings unless they are clearly erroneous.

*State v. Wallace*, 372 Md. 137, 144 (2002) (internal citations omitted).

In this case, it was necessary for the trial court to apply different standards of review when it was addressing the warrantless seizure of Moats's cell phone and the subsequent search of the data contained in the cell phone pursuant to a warrant. Our review of the record demonstrates that the suppression court's comments on the record were primarily directed at the second question regarding the search of the phone pursuant to a warrant. As such, the court correctly, albeit perhaps inartfully, noted that the court was to consider the evidence contained in the affidavit in the light most favorable to the State and that the burden of proof was less than the "beyond a reasonable doubt standard" necessary to prove that an individual is guilty of a criminal offense. Indeed, as we shall discuss below, substantial basis review is highly deferential and requires viewing evidence in the light most favorable to the State. Accordingly, the trial court did not err in denying Moats's motion to suppress the evidence.

The suppression court did not clearly explain its ruling regarding the warrantless seizure of Moats's cell phone for two days before the police obtained a warrant for their search. We note, however, that the facts presented in this case regarding when and why the police seized Moats's cell phone are not in dispute. Because we review the court's

7

legal conclusions *de novo*, whether or not the suppression court applied the correct standard of review is of little consequence to our determination of this appeal.

Regarding the merits of Moats's motion to suppress, we first consider whether the suppression court erred by determining that the warrantless seizure of Moats's cellular phone following his arrest and the retention of the cellular phone after he was released from jail was legal.

The Fourth Amendment of the United States Constitution guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV, cl. 1. This constitutional mandate is made applicable to the states through the Fourteenth Amendment and is embodied in Article 26 of the Maryland Declaration of Rights.[2] *Corbin v. State*, 428 Md. 488, 499 (2012). Subject only to a few specifically established and well-delineated exceptions,[3] a warrantless search or seizure that infringes upon the protected interests of an individual is

---

[2] Article 26 of the Maryland Declaration of Rights provides:

> That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

[3] Notable exceptions to the warrant requirement include: search incident to an arrest (*Arizona v. Gant*, 556 U.S. 332 (2009)); hot pursuit (*Warden v. Hayden*, 387 U.S. 294 (1967)); the plain view doctrine (*Horton v. California*, 496 U.S. 128 (1990)); the *Carroll* doctrine (*Carroll v. United States*, 267 U.S. 132 (1925)); stop and frisk (*Terry v. Ohio*, 392 U.S. 1 (1968)); consent (*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)); community caretaking doctrine (*Wilson v. State*, 409 Md. 415 (2009)); and exigent circumstances (*Kentucky v. King*, 563 U.S. 452 (2011)).

presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Belote v. State*, 411 Md. 104, 112 (2009) (citations omitted). The government bears the burden of overcoming the presumption that a warrantless search or seizure is illegal. *Southern v. State*, 371 Md. 93, 105 (2002).

An individual demonstrates that he or she had a protected interest in a place or property by showing that "he or she maintained 'a legitimate expectation of privacy' in the house, papers, or effects searched or seized." *Whiting v. State*, 389 Md. 334, 346 (2005) (citing *Katz*, 389 U.S. at 353 (additional citations omitted)). The individual must "demonstrate an actual (subjective) expectation of privacy in the item or place searched, [and] prove that the expectation is one that society is prepared to recognize as reasonable." *Williamson v. State*, 413 Md. 521, 534-35 (2010) (citing *Katz*, 389 U.S. at 361 (Harlan, J. concurring)).

In the last several years, various courts have noted the unique role cellular phones play in our lives and have recognized the protected interest individuals have in the data contained in their cellular phones. *See e.g. Riley v. California*, 134 S. Ct. 2473, 2484, 2489 (2014) (characterizing cell phones as "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy" and acknowledging that these "minicomputers that also happen to have the capacity to be used as a telephone" also function as "cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers"); *State v. Andrews*, 227 Md. App. 350, 354 (2016) (describing cell phones as "a piece of technology so ubiquitous as to be on the person of practically every citizen"). Accordingly,

courts have extended the protection of the Fourth Amendment to cellular phones and now require that, in most cases, the police obtain a warrant before searching the digital contents of a cell phone even when that phone was validly seized incident to a legal arrest. *Riley*, 134 S. Ct. at 2493; *Sinclair v. State*, 444 Md. 16, 38-39 (2015) (discussing *Riley*).

In this case, prior to his arrest, Moats had confessed to the police that he had distributed marijuana and suboxone to the other teenagers and that he was present at the party where A.D.C. was purportedly sexually assaulted. His drug distribution and his presence at the party were corroborated by the accounts of the other witnesses. In addition, his participation in the distribution of heroin and his knowledge of and/or involvement in the sexual assault of A.D.C. was alleged by more than one witness. The police obtained a warrant and arrested Moats on January 23, 2015.

In his appeal, Moats does not contend either that his arrest on the drug charges was illegal or that the initial seizure of his cellular phone during the search incident to his arrest on January 23, 2015, was unreasonable. Instead, he asserts that the police did not have probable cause to retain his phone after he was released from jail on January 24, 2015, and that the suppression court utilized the wrong standard of review to assess whether the warrantless seizure of his phone was improper.

At the motions hearing, Sergeant Zimmerman testified that he kept Moats's cell phone "to obtain further information on the investigation with [A.D.C.] and the sex offense, along with the CDS case." As Sergeant Zimmerman noted in the affidavit that accompanied his request for a warrant to search the phone, he knew "through his training

10

and experience that individuals who participate in such crimes communicate via cellular telephones . . . ."

Certainly, from our case law, it is clear that individuals use their cell phones to document all kinds of criminal behavior on a rather regular basis and that data recovered from cellular phones is frequently admitted as evidence of guilt in criminal trials. *See e.g. Demby v. State*, 444 Md. 45, 46 (2015) (drug-related text messages); *Spence v. State*, 444 Md. 1, 3 (2015) (drug-related text messages); *Sinclair v. State*, 444 Md. 16, 18 (2015) (screen images from cellular phone of custom wheel rims of stolen car); *Cortez v. State*, 220 Md. App. 688, 691 (2014), *cert. denied*, 442 Md. 516 (2015) (cell phone video showing a sexual assault on a woman by several men). Based on the evidence known to the police at the time Moats was arrested, we conclude that the police, reasonably believing that the phone could contain evidence that was pertinent to two active police investigations, had probable cause to seize and retain Moats's cell phone for the period of time necessary to obtain a warrant.

Two days after Moats was released from jail, on January 26, 2015, the police obtained a warrant and searched the digital content on Moats's phone. In the course of the search, the police recovered photographs of an explicitly sexual nature portraying an unidentified female subject as well as a video of a young woman engaged in sexual intercourse with a man the police believed to be Moats. By seizing the cell phone incident to Moats's arrest and then subsequently obtaining a warrant before conducting any search of the phone's contents, the police acted in accordance with the Constitution and Article 26 of the Maryland Declaration of Rights. *Riley*, 134 S. Ct. at 2486 (advising that it is

11

permissible for the police to seize and hold a cell phone "to prevent destruction of evidence while seeking a warrant").[4]  Accordingly, we discern no error in the trial court's denial of Moats's motion to suppress the evidence recovered from his cell phone based on the warrantless seizure of the phone incident to his arrest or the police's failure to return the phone to Moats when he was released from jail.

We shall next consider whether the district court judge who issued the search warrant had a rational basis for concluding that the evidence sought would be discovered in Moats's cellular phone.

The Fourth Amendment of the United States Constitution prohibits the issuance of any warrant except "upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV, cl. 2.  To demonstrate probable cause, the affidavit that accompanies a request for a search warrant must show that "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place.  *Ornelas v. United*

---

[4]  Courts in other jurisdictions that have considered similar questions have reached similar conclusions.  *See e.g. United States v. Burgard*, 675 F.3d 1029, 1033-35 (7th Cir. 2012) (finding that a six-day delay between the seizure of a cell phone and the search of the device pursuant to a warrant was not unreasonable); *United States v. Gholston*, 993 F. Supp. 2d 704, 713 (E.D. Mich 2014) (finding no constitutional impediment to law enforcement's "authority to take [a suspect's] cell phone from him at the scene of his arrest and hold it for several days before seeking a search warrant"); *United States v. Arellano*, 410 Fed Appx. 603, 606-07 (4th Cir. 2011) (affirming the denial of the defendant's motion to suppress evidence obtained from his cell phone, where the phone was legally seized incident to his arrest and then searched more extensively two months later pursuant to a warrant).

*States*, 517 U.S. 690, 696 (1996).  The test does not require that the affidavit establish a *prima facie* showing of criminal activity or that the police have personal knowledge or direct evidence that contraband will be found in the location to be searched, but only that there is a nexus between the objects to be seized and the place to be searched from which a person of reasonable caution would believe that the articles sought might be found there. *See Holmes v. State*, 368 Md. 506, 522 (2002) (advising that probable cause "may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items.").

A warrant-issuing judge is tasked with reaching "a practical and common-sense decision, given all of the circumstances set forth in in the affidavit, as to whether there exists a fair probability that contraband or evidence of a crime will be found in a particular search. *Greenstreet v. State*, 392 Md. 652, 667-68 (2006) (citing *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)).  The warrant-issuing judge's consideration is limited to only "the averments contained in the search warrant application." *Ferguson v. State*, 157 Md. App. 580, 592 (2004) (citing *West v. State*, 137 Md. App. 314, 322 (2001)).  The judge is permitted to accept and rely upon statements made by the affiant regarding information gained through his or her knowledge, training, and experience. *See State v. Johnson*, 208 Md. App. 573, 606-616 (2012) (discussing *State v. Coley*, 145 Md. App. 502, 530-31 (2002); *State v. Faulkner*, 190 Md. App. 37, 44, 52 (2010); and *Behrel v. State*, 151 Md. App. 64, 96-97 (2003)).

13

Nevertheless, the role of a suppression court or this Court when we subsequently undertake to review the sufficiency of a warrant, is quite different. "The question before us is not whether probable cause existed that evidence would be found in the [place] to be searched but whether the judge who issued the search warrant had a 'substantial basis' for so finding." *Johnson*, 208 Md. App. at 580. *See also Gates*, 462 U.S. at 236 ("after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review"); *Ramia v. State*, 57 Md. App. 654, 660, *cert. denied*, 300 Md. 154 (1984) ("reviewing courts . . . have no business second-guessing the probable cause determinations of warrant-issuing magistrates by way of *de novo* determinations of their own"). Critically, the substantial basis test is highly deferential. *See Gates*, 462 U.S. at 236 ("A magistrate's 'determination of probable cause should be paid great deference by reviewing courts'" (citation omitted)); *Johnson*, 208 Md. App. at 583-84. ("Once a duly authorized judicial officer has issued a search (or arrest) warrant, any subsequent review of that decision . . . must be appropriately deferential."); *State v. Amerman*, 84 Md. App. 461, 463 (1990) ("The issue is no longer the familiar one of whether probable cause exists; that has already been determined by someone else.").

The evidence necessary to demonstrate a "substantial basis" is less than that which is required to prove "probable cause." *See Johnson*, 208 Md. App. at 586-87 ("A substantial basis is less weighty and less logically probative than probable cause . . . some warrant applications will [pass] muster under the lesser test that would not pass muster under the more demanding test."); *Aguilar v. Texas*, 378 U.S. 108, 111 (1964) ("[W]hen a search is based upon a magistrate's, rather than a police officer's, determination of probable

14

cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant.'").

This deferential review is motivated by the Courts' express desire to encourage police officers to seek warrants before conducting any search or seizure. *See Gates*, 462 U.S. at 236 ("'A grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preferences for searches conducted pursuant to a warrant" (citation omitted)); *Volkomer v. State*, 168 Md. App. 470, 486 (2006) ("The presumption that a search warrant is valid provides an incentive to police officers to seek judicial approval before effectuating a search."). "[I]f warrants are subjected to too tight a scrutiny, the police may deem it inappropriate to rely on them." *Johnson*, 208 Md. App. at 591. We have, therefore, adopted a policy that "we read possibly ambiguous language with an eye toward upholding the warrant rather than toward striking it down." *Hignut v. State*, 17 Md. App. 399, 413 (1973). *See also United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.").

In this case, the affidavit that accompanied Sergeant Zimmerman's request for a search warrant did not include any direct evidence that Moats's cell phone contained data that was relevant to proving his involvement in dealing drugs or participating in sexual offenses. The affidavit does not indicate that any of the witnesses who were interviewed about the night in question asserted that they had communicated with Moats by phone, text, or email, or that they had observed Moats taking any pictures at the party they attended.

15

As the Court of Appeals has made clear, however, "[d]irect evidence that contraband exists in the [place to be searched] is not required for a search warrant[.]" *Holmes*, 368 Md. at 522. "[P]robable cause may be inferred from the type of crimes, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items." *Id.*

The police recovered the cell phone in question from Moats when he was arrested. Since the phone was in Moats's sole possession, it was reasonable to infer that the phone belonged to Moats and that he personally utilized it to conduct his business and personal affairs. Moreover, Moats had already confessed that he had committed criminal acts, possessing marijuana and suboxone and distributing those drugs to other people. The warrant affidavit further indicated that there was reason to believe Moats was also involved in and/or had knowledge of other crimes.[5] As we noted above, electronic data from cellular phones is not infrequently recovered and admitted into evidence to prove guilt in criminal

---

[5] In his brief, Moats relies heavily on the Court of Appeals opinion in *Agurs v. State*, 415 Md. 62 (2010). In part of the *Agurs* opinion (that was adopted by only three members of the Court), the authoring judge opined that the search warrant affidavit "provided limited facts suggesting that Agurs was involved with drug distribution." *Id.* at 88. In this case, Moats admitted that he had engaged in criminal activity, providing much stronger evidence of his criminal wrongdoing. The instant case, therefore, is distinguishable on its facts from *Agurs*. *See Johnson*, 208 Md. App. at 601 (distinguishing *Agurs* based on the relative strength of the evidence of criminal wrongdoing). In any event, the plurality holding in *Agurs* has little precedential value in this case. The only question before the Court of Appeals in *Agurs* was whether the law enforcement officers who executed the search warrant of a home did so in good faith. *Agurs*, 415 Md. at 75. The Court did not grant *certiorari* concerning the adequacy of a nexus between the defendant's criminal acts and his home. *Id.* at 68 n. 3.

16

proceedings in Maryland Courts, including proceedings for drug distribution and sexual offenses.

By searching the cellular phone, Sergeant Zimmerman was seeking to recover, among other things, electronic data including phone call records, text messages, stored phone numbers, photographs, email, and financial records, exactly the kind of things that individuals routinely maintain in their cellular phones. Thus, the crimes Moats stood accused of committing are of the type that could be proved by the admission of electronic evidence of the type that often is stored in an individual's personal cellular phone.

And finally, Sergeant Zimmerman attested in the affidavit that he knew "through his training and experience" that "individuals who participate in such crimes communicate via cellular telephones." Again we note that warrant-issuing judges "are entitled to give credence to the expertise and experience of police officers in developing knowledge about the practices and proclivities of drug dealers" and other criminals. *Agurs*, 415 Md. at 109 (Barbera, J., dissenting) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating that the totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person")). Sergeant Zimmerman's averment, in conjunction with the other evidence presented in the affidavit in support of the warrant, was sufficient to provide a common-sense nexus between the offenses Moats was accused of committing and the phone to be searched.

Under all the circumstances, we are persuaded that the affidavit that accompanied the search warrant provided a substantial basis for the warrant-issuing judge to reasonably

17

infer that evidence of Moats's involvement in drug dealing or sexual offenses was likely to be found in a search of Moats's cellular phone. We conclude, therefore, that the circuit court did not err by denying Moats's pre-trial motion to suppress the photographs and video that were recovered from his cellular phone.

Assuming *arguendo* that we determined that the warrant judge did not have a substantial basis to issue the search warrant in this case, we would still uphold Moats's conviction. The record demonstrates that Sergeant Zimmerman acted in good faith in preparing the affidavit and obtaining a warrant before searching the electronic contents of Moats's cellular phone. Sergeant Zimmerman testified at the suppression hearing to his objective belief that the search warrant was supported by probable cause. He further attested that he relied on the warrant-issuing judge's determination that the warrant application was sufficient. We conclude, therefore, that the good faith exception to the warrant requirement would allow admission of the photographs and videos that were recovered from Moats's cell phone even had the warrant been defective. *United States v. Leon*, 468 U. S. 897 (1984).

> **JUDGMENT OF THE CIRCUIT COURT FOR GARRETT COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**