*Timothy Alan Moats v. State of Maryland*, No. 89, September Term, 2016

**CRIMINAL LAW — FOURTH AMENDMENT — SEARCH WARRANT FOR CELL PHONE — SUBSTANTIAL BASIS —** The affidavit in support of the search warrant provided a substantial basis for the warrant-issuing judge to find probable cause to search Petitioner's cell phone where the affidavit provided detailed allegations of Petitioner's involvement with drug possession and distribution and a sexual assault; Petitioner confessed that he possessed and distributed drugs; and the officer stated his opinion that, based on his training and experience as a Criminal Investigator, individuals who participate in such crimes communicate via cell phones.

Circuit Court for Garrett County
Case No. 11-K-15-005189
Argued: May 8, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 89

September Term, 2016

_____

TIMOTHY ALAN MOATS

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.
Greene and Adkins, JJ., concur.

_____

Filed: August 31, 2017

We granted a writ of certiorari in this case to consider the scope of information necessary to supply probable cause for a warrant to search a cell phone. Petitioner, Timothy Alan Moats, was convicted of possession of child pornography, based in large part on photographs and a video the police found on his cell phone while executing a warrant to search it. Before trial, Petitioner filed a motion to suppress the photographs and video. The circuit court denied the motion and, on appeal following Petitioner's conviction, the Court of Special Appeals affirmed the circuit court's ruling, holding that the affidavit in support of the warrant provided a substantial basis for the judge who issued the warrant to find probable cause to search the cell phone. *Moats v. State*, 230 Md. App. 374, 394 (2016). The intermediate appellate court held, in the alternative, that even if there was not a substantial basis for issuance of the warrant, the police acted in good faith reliance upon it. *Id*. For the reasons that follow, we agree with the Court of Special Appeals that the warrant was supported by probable cause. We therefore have no need to address the applicability of the good faith doctrine.

I

Background

The case before us stems from discoveries the police made while investigating an unrelated incident. The pertinent facts of that investigation and its connection to this case were presented through the testimony of Sergeant Robert Zimmerman of the Garrett County Sheriff's Office. Sergeant Zimmerman was the only witness to testify at the hearing on Petitioner's motion to suppress the evidence discovered during the search of Petitioner's cell phone. Sergeant Zimmerman's undisputed testimony and the affidavit for

the search warrant supplied the following information:

One night in early January 2015, Petitioner and three other teenagers were riding in Petitioner's car through parts of Garrett County. During the ride, Petitioner provided marijuana and a pill containing Suboxone, a prescription drug used to treat opioid addiction. Petitioner crushed the pill with a lighter, snorted some of the substance using a dollar bill, and then passed it to the others. Later that night, the four teenagers arrived at a party, where it was later alleged that one member of the group, A.D.C., was sexually assaulted. Approximately two weeks later, Sergeant Zimmerman interviewed A.D.C., who recounted the events of the night in question, including Petitioner's provision of Suboxone. Sergeant Zimmerman later interviewed the others who had been in the car that night, including Petitioner.

Petitioner told Sergeant Zimmerman that he and the others had used drugs, but he denied any involvement in the sexual assault of A.D.C. Relying in part on that admission, as well as the reports and interviews with A.D.C. and the other teenagers, the police obtained a warrant to arrest Petitioner on the drug-related charges.[1] Sergeant Zimmerman testified that the police arrested Petitioner on January 23, 2015, and transported him to the Garrett County jail, where he was searched and the police seized the cell phone he was carrying.[2] Petitioner was released from custody on January 24, 2015. His cell phone was

---

[1] Although the police continued to investigate the alleged sexual offense at the time pertinent to this case, it does not appear from the record that charges were ever filed, or an arrest made, in connection with the sexual assault allegation.

[2] As we shall see, three days after arresting Petitioner, Sergeant Zimmerman prepared the application and affidavit in support of the warrant to search the cell phone. The warrant

2

not returned to him. Sergeant Zimmerman retained it "[t]o obtain further information on the investigation with [A.D.C.] and the sex offense, along with the CDS case."

On January 26, 2015, two days after Petitioner's release, Sergeant Zimmerman prepared an application and affidavit for a warrant to search the cell phone. Consistent with his testimony at the suppression hearing, Sergeant Zimmerman included in the affidavit Petitioner's admission to distribution of Suboxone and marijuana. He also recounted his interview with A.D.C., who explained in detail the car ride during which Petitioner used and distributed the Suboxone. Sergeant Zimmerman further recounted that he had interviewed the other passengers in the vehicle on the night in question and obtained from them the same information regarding the drug use. Sergeant Zimmerman also included information concerning his interview of a fifth person, R.W., who was not in the vehicle on the evening in question but later learned from A.D.C. about the drug distribution and sexual assault.

The warrant affidavit also included the circumstances of Petitioner's arrest on January 23, 2015, and the seizure of the cell phone in Petitioner's possession at the time of his arrest. The warrant affidavit further stated:

> Your Affiant knows through his training and experience as a Criminal Investigator that individuals who participate in such crimes communicate via cellular telephones, via text messages, calls, e-mails etc.
>
> Your Affiant avers, based on the information received from the

affidavit simply states that the police seized the cell phone upon Petitioner's arrest. We recognize the difference between the text of the affidavit and Sergeant Zimmerman's testimony at the suppression hearing several months later. Petitioner, however, has never asserted that the cell phone was not seized "incident" to his arrest. We therefore have no cause to address the matter.

aforementioned sources, your Affiant's observations, training, knowledge and expertise as a member of the Garrett County Sheriff's Office, Criminal Investigation Division, that there is probable cause to believe, and does believe, that evidence of violations of the laws relating to Sexual Offense, and related crimes, as well as the Possession and Distribution of Controlled Dangerous Substances as herein before cited, is contained in and upon the aforementioned cellular telephone.

The affidavit details Sergeant Zimmerman's training and experience as a seventeen-year veteran of the Garrett County Sheriff's Office, including his work with the Garrett County Narcotics Task Force and with crimes involving Controlled Dangerous Substances.[3] The

---

[3] The affidavit contained the following paragraphs highlighting Sergeant Zimmerman's training and experience:

The name of your Affiant is Sergeant Robert A. Zimmerman, Garrett County Sheriff's Office, Criminal Investigation Division. Your Affiant has been a police officer for seventeen years, and satisfactorily completed the Western Maryland Police Training Academy (24 weeks), which included courses in the identification and recognition of Controlled Dangerous Substances, which is mandated by the Maryland Police Training Commission. Your Affiant has been a road officer from 1998 to September 2002, when he was assigned to the Garrett County Narcotics Task Force. While performing as a road officer your Affiant made numerous arrests for violations of Maryland's Controlled Dangerous Substance laws that resulted in convictions. These arrests included but are not limited to marijuana and related crimes. Your Affiant has assisted the Garrett County Narcotics Task Force in the execution of numerous search and seizure warrants. While assisting the Task Force your Affiant assisted in the arrest of numerous subjects for violations of Maryland's Controlled Dangerous Substance Laws. Your Affiant has testified in criminal cases for the Circuit Court of Garrett County. Your Affiant has participated in the preparation and/or execution of Search and Seizure Warrants relating to violations of the Controlled Dangerous Substance Laws, and has participated in the arrest of persons in violation of Controlled Dangerous Substance Laws. Your Affiant has learned to recognize various types of Controlled Dangerous Substances including, but not limited to the following: marijuana, powder cocaine, rock cocaine, LSD, heroin, methamphetamine, MDMA (ecstasy), ketamine, and the different styles of manufacturing and packaging for sales.

affidavit also provided detail regarding the types of cell phone data to be searched:

Therefore, your Affiant prays that a Search and Seizure Warrant be issued for the aforesaid cellular phone more particularly described aforesaid with the necessary and proper assistance to:

(A) Seize and cause to be completely examined by Your Affiant or, if necessary, a competent forensic cellular phone examiner, any and all electronic data processing and storage devices located in the above-described cellular telephone. Any phone call records being sent or received on these devices, any text mail "messages" sent or received on these devices, any

---

In April 2002, your Affiant attended a seven-day Undercover Drug Law Enforcement Training class, taught by the Maryland State Police and Northeast Counterdrug Training Center. Topics of instruction included developing and working with confidential informants, surveillance and counter surveillance, undercover drug purchases, search warrant preparation, raid planning, and service of search warrants.

In September 2002, your Affiant was transferred to the Garrett County Narcotics Task Force, with the responsibility of conducting investigation[s] into the alleged violations of controlled dangerous substance laws. Your Affiant has had the opportunity to be the Affiant or Co-Affiant on over sixty Search and Seizure Warrants related to CDS activity, as well as participating in the preparation and/or execution of over one hundred fifty search and seizure warrants relating to violations of the controlled dangerous substance laws. Your Affiant has made over two hundred fifty arrests for persons violating Maryland's Controlled Dangerous Substance Laws. Your Affiant has made numerous arrests and recovered quantities of cocaine, marijuana, heroin, and various paraphernalia used for the distribution, packaging, and manufacturing of controlled dangerous substances.

From September 2002 through December 2010, your Affiant has attended at least 20 specialized training programs relating to CDS investigations.

In January 2011, your Affiant was transferred to the Criminal Investigation Division of the Garrett County Sheriff's Office, with the responsibility of investigating criminal violations within Garrett County. In this capacity, you[r] Affiant has also authored and executed approximately 20 search and seizure warrants.

5

stored, un-stored, unsorted phone numbers on these devices, any photographs stored on these devices, any external memory devices used on these devices in or incidental to the mentioned aforesaid crimes, as defined in the Annotated Code of Maryland, amended and revised; and

(B) Seize and cause to be completely examined by Your Affiant or, if necessary, a competent forensic cellular telephone[ ] examiner[,] all media storage devices, including but not limited to e-mail content, text messages, photos and/or financial records and/or any and all account information that would relate to the aforesaid crimes, as defined in the Annotated Code of Maryland[.]

Later that same day, a judge of the District Court sitting in Garrett County issued the warrant.

Detective Keith Parks conducted a forensic investigation of the cell phone. In the course of that search, he discovered sexually explicit photographs and a video of a young female, taken between January 16 and 21, 2015. It was eventually discovered that the female in the photographs and video was Petitioner's girlfriend, who was fifteen years old at the time those images were created. Petitioner, eighteen years old at that time, was indicted in the present case with three counts relating to child pornography and one count of second degree assault.

II

The Proceedings

A. *The motion to suppress*

Petitioner filed a motion to suppress the cell phone and the evidence obtained from the search of it. He advanced several arguments, all of which were grounded in the

6

protections provided by the Fourth Amendment to the Constitution of the United States.[4] A hearing on that motion was held on June 18, 2015.

Petitioner argued first that his arrest on January 23, 2015, was not supported by probable cause and, therefore, the cell phone and its contents must be suppressed as the tainted "fruits" of the illegal arrest.[5] He further argued that, even if that arrest was lawful, the continued retention of his cell phone after his release on January 24, 2015, constituted an illegal warrantless seizure. From that premise, he further argued that the subsequent search of the cell phone, notwithstanding that it was conducted pursuant to a warrant, was the tainted fruit of the seizure of the cell phone. Petitioner also attacked the search warrant on the ground that it did not set forth probable cause to conduct the search. He asserted, in particular, that the affidavit in support of the warrant did not set forth probable cause for either the police to have arrested him for the crimes alleged in early January 2015 or to establish a "nexus" between those crimes and the contents on his cell phone.

Petitioner did not testify at the hearing on the motion, call any witnesses, or offer any evidence other than a document from "Case Search"[6] reflecting his release on January 24, 2015. Following arguments from counsel, the court issued its ruling on the motion.

---

[4] Petitioner also cited Article 26 of the Maryland Declaration of Rights in his motion and in his opening brief before this Court, yet at neither juncture did he make a separate argument under that state constitutional provision.

[5] *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

[6] "Case Search" is the Judiciary's online website that "provides public access to the case records of the Maryland Judiciary." Maryland Judiciary, *Case Search*, http://casesearch.courts.state.md.us/casesearch (last visited Aug. 14, 2017) [https://perma.cc/8R7D-M9PY].

The circuit court rejected Petitioner's argument that his arrest was not supported by probable cause, thereby also rejecting his argument that the fruits of the arrest—the cell phone and the photos and video found on it—were tainted and must be suppressed. The circuit court also rejected Petitioner's alternative contention that Sergeant Zimmerman did not have probable cause to retain the cell phone following Petitioner's release on January 24. Finally, the court disagreed with Petitioner that the warrant to search the cell phone was not supported by probable cause. The court ultimately ruled that the warrant was properly issued.

B. *The trial, appeal, and writ of certiorari*

The parties agreed that Petitioner would be tried on an agreed statement of facts on one count of possession of child pornography. The court found Petitioner guilty on that count, and, as further agreed by the parties before trial, the remaining counts were dropped, as were the unrelated drug charges then pending in the District Court. The court sentenced Petitioner to eighteen months of incarceration, all suspended but the time he had already served. The court also sentenced Petitioner to two years' probation and required that he register as a sex offender.

Petitioner appealed the judgment to the Court of Special Appeals. Petitioner raised before the intermediate appellate court all but one of the arguments he had presented to the suppression court, abandoning only the claim that the cell phone and its contents were tainted fruits of an unlawful arrest.

The Court of Special Appeals rejected Petitioner's arguments. The court held, first, that the police were justified in continuing to retain Petitioner's cell phone after his release,

8

in anticipation of seeking a warrant to search it. The Court of Special Appeals determined that the police reasonably believed that the phone would contain evidence pertaining to the then-ongoing police investigation of Petitioner's alleged involvement in the early January 2015 incidents. *Moats*, 230 Md. App. at 388. The Court of Special Appeals also concluded that the information provided in the warrant affidavit supported a reasonable inference that Petitioner allegedly engaged in drug-related activity and was involved in the sexual assault upon A.D.C. The court further held that the affidavit supported a similarly reasonable inference that evidence of one or the other of those alleged offenses would be found on Petitioner's cell phone, thereby establishing a substantial basis for issuance of the search warrant. *Id.* at 394. Alternatively, the Court of Special Appeals held that, even if there was not a substantial basis for issuance of the warrant, Petitioner was not entitled to suppression of the evidence because "[t]he record demonstrates that Sergeant Zimmerman acted in good faith in preparing the affidavit and obtaining a warrant before searching the electronic contents of [Petitioner's] cellular phone." *Id*. (citing and applying the good faith doctrine established in *United States v. Leon*, 468 U.S. 897 (1984)).

We granted Petitioner's petition for writ of certiorari to answer the following questions:

    I.    Does an individual's suspected involvement in a crime and a police officer's belief that a cell phone could be used in that crime, without more, constitute probable cause to seize and search that individual's cell phone?

    II.   Does the good faith exception to the exclusionary rule for the fruit of an illegal search and seizure apply in this case?

As we noted at the outset, because we answer "yes" to the first question under the facts

presented here, there is no need to address the second question.

III

Discussion

A.  *The parties' contentions*

As he did before the Court of Special Appeals, Petitioner advances two arguments. He argues that the police unlawfully retained the cell phone after his release because, at that time, the police did not have probable cause that it contained evidence of the crimes for which he had been arrested.  He separately argues that the search warrant failed for lack of the requisite probable cause that his cell phone contained evidence of the drug-related activity and the alleged sexual assault of A.D.C.

The State replies that the police lawfully retained the cell phone because the authority to seize it incident to Petitioner's arrest did not evaporate upon Petitioner's release.  As for Petitioner's argument that the search warrant was not supported by probable cause, the State argues that there was a substantial basis for the warrant's issuance.  We agree with the State on both scores.

B.  *The standard of review*

Our review of a ruling on a motion to suppress evidence is limited to the record developed at the suppression hearing.  *Raynor v. State*, 440 Md. 71, 81 (2014).  "We view the evidence and inferences that may be drawn therefrom in the light most favorable to the party who prevails on the motion," here, the State.  *Id.*  "We accept the suppression court's factual findings unless they are shown to be clearly erroneous."  *Id.*  "[W]e review legal questions *de novo*, and where, as here, a party has raised a constitutional challenge to a

10

search or seizure, we must make an independent constitutional evaluation by reviewing the relevant law and applying it to the unique facts and circumstances of the case." *Grant v. State*, 449 Md. 1, 14–15 (2016) (quoting *State v. Wallace*, 372 Md. 137, 144 (2002)).

C. *The continued retention of the cell phone to obtain a search warrant*

After seizing Petitioner's cellphone upon his arrest, the police held it for two days after Petitioner's release before obtaining a warrant to search it. Petitioner challenges not the initial seizure of the cell phone, but rather its continued retention after his release. He argues that the continued retention of the cell phone violated the Fourth Amendment because it was retained without the police having possessed, evidently at the moment of his release, probable cause that the cell phone contained evidence of the drug charges for which he had been arrested three days earlier. We disagree.

Petitioner does not argue at this juncture that his arrest on charges related to drug distribution was unlawful. He could not do so successfully, in any event, given his admission to Sergeant Zimmerman that he shared Suboxone and marijuana with the other teens while they were together in Petitioner's car in early January 2015. Petitioner further appears to concede that the police had the authority automatically to seize the cell phone he had on his person at the time of the arrest. That is also a wise concession, given the Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014), decided seven months before Petitioner's arrest. The Supreme Court held in *Riley* that the Fourth Amendment permits the police automatically to seize a cell phone found incident to a lawful arrest, secure it, and "eliminate[] any potential physical threats" the cell phone may hold, but, once such concerns are satisfied, the police may only search the data on a cell

11

phone with a warrant. *Id.* at 2485–86, 2495. *See also Sinclair v. State*, 444 Md. 16, 36–41 (2015) (summarizing the *Riley* Court's review of that Court's jurisprudence on the search-incident-to-arrest exception and discussing *Chimel v. California*, 395 U.S. 752 (1969); *United States v. Robinson*, 414 U.S. 218 (1973); and *Arizona v. Gant*, 556 U.S. 332 (2009)); *Spence v. State*, 444 Md. 1, 6–10 (2015). That is precisely what the police did here.

We see no merit in Petitioner's contention that the authority of the police to hold his cell phone pending their effort to obtain a search warrant evaporated at the moment of his release. Although the *Riley* Court did not address the point, we believe it implicit in the Court's holding that the police may hold a cell phone seized pursuant to a lawful arrest for as long as is reasonably necessary to seek a search warrant. Of course, the police are not entitled to the issuance of a search warrant unless the affidavit in support of it establishes probable cause that evidence of the crime could be found in the place to be searched.

We are not persuaded to a contrary conclusion by Petitioner's citation of two cases, *United States v. Place*, 462 U.S. 696 (1983), and *United States v. Gomez*, 807 F. Supp. 2d 1134 (S.D. Fla. 2011), which he believes support his argument that the continued retention of his cell phone was unlawful. Neither case support the proposition for which it is offered, as neither deals with the seizure of an arrestee's property incident to a lawful arrest.

*Place* involved a 90-minute detention of a traveler's luggage to await the arrival of a drug-sniffing dog. 462 U.S. at 699. Although the police had reasonable suspicion that the traveler's luggage contained drugs, the Court held that probable cause was necessary for a detention of that length. *Id.* at 708–09. The Court further observed that the combined circumstances attendant to the detention of the luggage was tantamount to a 90-minute

12

detention of the traveler as well.  *Id.* at 708.

We are even less persuaded that *Gomez* is relevant to the issue we decide here.  That case, decided before *Riley*, involved the warrantless search of an arrestee's cell phone's call log history at the time of the arrest.  807 F. Supp. 2d at 1138–39.  The district judge upheld the warrantless search, citing *Place* and explaining in dicta and that any search of a cell phone that is supported by probable cause but is not conducted incident to the arrest must await the issuance of a warrant to examine its contents.  *Id.* at 1148–49.

The facts here are a far cry from *Place* and *Gomez*.  As for *Gomez*, that case is of little relevance in that it authorized a *warrantless* search of Gomez's cell phone incident to his arrest, which, under *Riley*, is no longer permitted absent an exigency.  Beyond that, the *Gomez* dicta is not inconsistent with the holding of *Riley* that the search of a cell phone seized pursuant to a lawful arrest, absent an exigency at the time of arrest, must await the issuance of a warrant to conduct the search.

Insofar as *Place* is concerned, there are obvious differences between that case and the case at bar.  We need not discuss those differences at any length to make the point.  It is enough that the cell phone here was seized incident to what Petitioner now concedes was a lawful arrest.  In contrast, the detention of the passenger's luggage in *Place*—based not on probable cause, but merely reasonable suspicion, that the luggage contained drugs— exceeded the temporal scope of the type of limited detention permitted under *Terry v. Ohio*, 392 U.S. 1 (1968).

If anything, *United States v. Chadwick*, 433 U.S. 1 (1977), would seem to be the strongest authority for the proposition Petitioner advances, but even that case does not

support his argument. In *Chadwick*, the Supreme Court held that it is reasonable for the police, when armed with probable cause to believe a mobile container[7] holds contraband or evidence of a crime, to seize the container without a warrant. But, unless exigent circumstances allow for an immediate search, the police may not search the container without a search warrant. *Id*. at 15–16.

Petitioner's cell phone was not seized under the *Chadwick* mobile container exception to the warrant requirement. Rather, the cell phone was seized pursuant to the search incident to arrest doctrine refined in *Riley*, permitting the police to seize a cell phone pursuant to an arrest that is based on probable cause that the arrestee has committed a crime. The police were entitled to seize—and retain—Petitioner's cell phone incident to that arrest, without any level of suspicion at the time of the seizure that the cell phone contained evidence of the crime. Under the auspices of that warrantless seizure, the police were authorized to retain the cell phone until three days later when they obtained a warrant to search it, notwithstanding Petitioner's release from custody in the interim. [8]

D. *The search warrant and search pursuant to it*

Petitioner focused most of his brief and oral argument on the assertion that the warrant to search the data on his cell phone was not supported by probable cause that the cell phone data contained evidence relating to the drug-related charges and the then-

---

[7] The container at issue in *Chadwick* was a footlocker.

[8] Petitioner does not argue that the police unreasonably delayed in seeking the search warrant. Although we can envision a case in which such an argument could be made, *see United States v. Burgard*, 675 F.3d 1029, 1032 (6th Cir. 2012) (citing *Segura v. United States*, 468 U.S. 796, 812 (1984)), this is not that case.

ongoing investigation of a sexual assault against A.D.C. The State disagrees and argues that the warrant to search Petitioner's cell phone meets the "substantial basis" standard by which warrants are to be reviewed for probable cause. We agree with the State.

The Fourth Amendment to the United States Constitution prohibits the issuance of any warrant except "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court has emphasized that "the probable cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Thus, "'the *quanta* . . . of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Id*. at 371 (quoting *Gates*, 462 U.S. at 235).

Probable cause is, moreover, "a fluid concept," *Gates*, 462 U.S. at 232, "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances," *Pringle*, 540 U.S. at 371. The facts and circumstances set forth in the affidavit, viewed in their totality, need only provide "*a fair probability* that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (emphasis added); *see also Texas v. Brown*, 460 U.S. 730, 742 (1983) ("[Probable cause] does not demand any showing that such a belief be correct or

15

more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required.") (citation omitted). The Supreme Court has further noted that probable cause may be based on "common-sense conclusions about human behavior." *Gates*, 462 U.S. at 231.

The Supreme Court has identified "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id*. at 236. Moreover, because "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," the Court has "thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. at 914 (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *United States v. Ventresca*, 380 U.S. 102, 108–09 (1965); and *Gates*, 462 U.S. at 236). Consequently, "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *Ventresca*, 380 U.S. at 106.

The deference owed to the judge who issued the warrant has produced the following standard by which a warrant is assessed for compliance with the dictates of the Fourth Amendment: "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236. As a result, once the reviewing court finds a substantial basis for the probable cause determination, that court is required to uphold the warrant. *Id.* at 238–39; *see also Patterson v. State*, 401 Md. 76, 89–90 (2007).

Applying that test to the case at bar, we must ask ourselves whether the judge who issued the warrant had a substantial basis for concluding that there was probable cause to

16

conduct the search of Petitioner's cell phone. Petitioner would have us answer "no" to that question.

Petitioner contends generally that the affidavit in support of the warrant does not establish a connection to his alleged crimes. He focuses most of his attention, however, upon what he views as the failure of the affidavit to establish a "nexus" between the alleged crimes and the "place"—his cell phone—where evidence of those crimes may be found. In particular, he claims that the required nexus is not established simply through Sergeant Zimmerman's assertion that individuals who participate in "such crimes" communicate via cell phones.

The State responds that, even were we to conclude that *we* might not find such a nexus, there was a substantial basis for the judge who issued the warrant to find that nexus. The State highlights the detailed allegations of criminal wrongdoing in the warrant affidavit. The State also argues that the nature of the crimes for which Petitioner was being investigated supports a "common-sense inference" that his cell phone might contain incriminating evidence. The State, moreover, emphasizes Petitioner's youth and Sergeant Zimmerman's training and experience as factors that bolster the probable cause determination in this case.

Petitioner points out that the warrant affidavit was devoid of specific facts linking the crimes and the cell phone. That much is so, but such direct evidence has never been required by the Fourth Amendment. *Ornelas v. United States*, 517 U.S. 690, 700 (1996) ("[O]ur cases have recognized that a police officer may draw inferences based on his own experience in deciding whether probable cause exists."); *Holmes v. State*, 368 Md. 506,

17

522 (2002) ("Direct evidence that contraband exists in the home is not required for a search warrant; rather, probable cause may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items."); *State v. Ward*, 350 Md. 372, 379 (1998) (concluding that the suspect's home was a "probable place for secreting objects" related to the crime) (quoting *Mills v. State*, 278 Md. 262, 280 (1976)). There must, of course, be a reasonable basis for such an inference to be drawn. *See Holmes*, 368 Md. at 523; *see also Agurs v. State*, 415 Md. 62, 87 (2010).

The information Sergeant Zimmerman set forth in the warrant affidavit supports a reasonable inference that Petitioner's cell phone contained evidence of his connection to the drug-related charges and sexual assault investigation. We consider first that the affidavit contained detailed allegations, gathered from Sergeant Zimmerman's meeting with A.D.C., that Petitioner provided Suboxone to A.D.C. and other individuals. During an interview with Petitioner two days later, Petitioner admitted that he and the other passengers "were all riding around and he did in fact bring with him [S]uboxone and marijuana. . . . He then provided the [S]uboxone to all the individuals in the vehicle." Petitioner, moreover, "admitted to smoking marijuana, bringing it with him and providing it to all the individuals in the vehicle." Although Petitioner "denied any knowledge and/or involvement with the sexual assault," Sergeant Zimmerman learned through an interview with R.W. that A.D.C. had told R.W. about the sexual assault and that R.W. believed Petitioner had knowledge of or was involved in the sexual assault. R.W. also told Sergeant Zimmerman that he saw "marks and injuries on [A.D.C.] after the incident."

18

We also take into account that the law permits a judge who is presented with an application for a search warrant to defer, within reason, to the expertise and experience of the affiant police officer when deciding whether to draw a reasonable inference that evidence sought could be found in the place to be searched. The judge may also consider the expertise and experience of the police officer in assessing what is to be made of facts that a layperson may consider insignificant or irrelevant. *See Arvizu v. United States*, 534 U.S. 266, 273 (2002) (explaining that police officers "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'") (citation omitted); *Longshore v. State*, 399 Md. 486, 534 (2007) ("In a probable cause determination, 'the experience and special knowledge of police officers . . . are among the facts which may be considered.'") (citation omitted).

Sergeant Zimmerman, a seventeen-year veteran of law enforcement experienced in drug-related investigations, stated: "Your Affiant knows through his training and experience as a Criminal Investigator that individuals who participate in such crimes communicate via cellular telephones, via text messages, calls, e-mails etc." He concluded that "there is probable cause to believe . . . that evidence of violations of the laws relating to Sexual Offense, and related crimes, as well as the Possession and Distribution of Controlled Dangerous Substances as herein before cited, is contained in and upon the aforementioned cellular telephone."

We consider all of the above through the prism of the substantial basis test, which demands we owe great deference to the decision of the judge who issued the warrant. We

19

begin by recognizing that some deference also is to be given to Sergeant Zimmerman's knowledge gained through his training and experience that persons use cell phones to communicate and that evidence of the crimes being investigated, and any related crimes, would be found on Petitioner's cell phone. *See Longshore*, 399 Md. at 534. This was not an unreasonable inference to draw, considering not only the prevalence of cell phones but also the degree of detail of one's daily life that is often contained in a cell phone. *See Riley*, 134 S. Ct. at 2490–91 ("[I]t is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. . . . A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form . . . .") (citation omitted). It would not be an overstatement to characterize cell phones as the repository of personal effects in digital form that heretofore would be found in physical form in the home or at the office. It therefore follows that, regardless of the "broad array" of information a cell phone may hold, the police nonetheless may seize a cell phone and search its digital contents with a duly authorized warrant that complies in all respects with the dictates of the Fourth Amendment. *Id*. at 2493–94. This is consistent with the Supreme Court's long-standing Fourth Amendment jurisprudence. *See Andresen v. Maryland*, 427 U.S. 463, 480–82 (1976) (observing that, in searching for an item identified in the warrant, the police executing the warrant may legitimately search through a large volume of other information in pursuit of the item that is the subject of the warrant); *Holmes*, 368 Md. at 522 (permitting a search of a home for evidence of drug-related crimes).

Moreover, the particulars of the events leading to Petitioner's arrest on drug distribution charges add to the reasonableness of the inference that Petitioner's cell phone contained evidence of that crime. The nature of the criminal activity of which Petitioner was suspected supported a "common-sense conclusion" that he might have incriminating evidence on his cell phone. *See Gates*, 462 U.S. at 231 (stating that probable cause may be based on "common-sense conclusions about human behavior"). By its description, the crime of drug distribution involves at least two participants—the supplier and the consumer. Other crimes also involve more than one perpetrator by definition: e.g., conspiracy to commit a crime, bribery, and solicitation to commit a crime. Other crimes that by definition do not require more than one perpetrator may nevertheless involve other individuals depending on the individual facts and circumstances of the crime. Any one of these examples could permit a reasonable inference that digital communications exist on the cell phones of any one of the participants.

One example, pertinent here, is found in *Glispie v. State*, which concluded that "it was reasonable for the magistrate to infer that the cell phones in [the suspect's] possession at the time of his arrest were used as communicative devices with third parties for drug deals." 793 S.E.2d 381, 385 (Ga. 2016); *see also United States v. Barret*, 824 F. Supp. 2d 419, 448 (E.D.N.Y. 2011) ("[T]he experience of narcotics investigators has been accepted as the basis to support . . . cell phone searches.") (citation omitted). It is likewise not unusual that persons committing a sexual assault, or an accomplice witnessing the crime, document the crime on their cell phones. *See, e.g., Brubaker v. Barrett*, 801 F. Supp. 2d 743, 746 (E.D. Tenn. 2011); *Hedgepath v. Commonwealth*, 441 S.W.3d 119, 122–23 (Ky.

21

2014); *State v. Betters*, 835 N.W.2d 249, 250 (Wis. Ct. App. 2013).

The charges for which Petitioner was arrested stem from the information Sergeant Zimmerman gathered not only from Petitioner himself but also the teens who accompanied him on the car ride and to the party on the night in early January 2015. That information—that Petitioner brought Suboxone and marijuana in the car, consumed, at the least, some of the Suboxone, and offered it to the others, as well as the then-still ongoing investigation of an alleged sexual assault of one of the teens later that night—provides a substantial basis for the judge who issued the warrant to find probable cause that Petitioner's cell phone contained evidence of some or all of that suspected criminal behavior.

We conclude, from all of the above, that the warrant-issuing judge had a substantial basis for issuing the warrant to search Petitioner's cell phone. We therefore hold that the suppression court did not err in denying Petitioner's motion to suppress the images of his fifteen-year old girlfriend that the police found while executing the warrant to search Petitioner's cell phone. We affirm the judgment of the Court of Special Appeals, which came to the same conclusion.

IV

Some Final Observations

Before concluding this opinion, we offer a few thoughts for judges—whether they be tasked with examining a warrant application or reviewing the decision of the warrant-issuing judge—that they might want to consider when the search at issue involves a cell phone. Unlike those of us who review search warrants for substantial basis or good faith execution, the judges of our circuit courts and the District Court to whom warrant

22

applications are presented have the more challenging task of determining whether probable cause exists in the first instance. In examining an affidavit in support of a warrant to search a cell phone, as in any other warrant application, judges always must consider the totality of the information contained in the affidavit.

Not every affidavit will (or should) result in issuance of a warrant to search a cell phone. We can imagine situations in which the nature of the crime will not support a warrant to search the suspect's cell phone; examples might include traffic offenses, public nuisance crimes, and the like. Even in cases where the connection between the suspected crime and the cell phone is more likely to be established, the lack of factual detail or other circumstances might countenance against a finding of probable cause. The affiant's professed training and experience might fall short of demonstrating to the judge's satisfaction that the affiant's prediction can be relied upon in determining whether the evidence sought will be found in the cell phone the affiant wants to search.

In the end, each application for a warrant to search a cell phone is to be addressed by the judge on the merits of the affidavit. The judge will necessarily consider the nature of the crime being investigated, the facts provided in support of the connection between that crime and the cell phone to be searched, and, depending upon the affiant's demonstrated training and experience, the degree to which the deference owed to the affiant adds to the ultimate decision. The decision of the warrant-issuing judge will ultimately rest on whether, in its totality, the affidavit sets forth a fair probability that the information will be found in the cell phone to be searched.

**JUDGMENT OF THE COURT OF**

**SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Garrett County
Case No. 11-K-15-005189
Argued: May 8, 2017

IN THE COURT OF APPEALS

OF MARYLAND

---

No. 89

September Term, 2016

---

TIMOTHY ALAN MOATS

v.

STATE OF MARYLAND

---

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

---

Concurring Opinion by Adkins, J., which
Greene, J., joins.

---

Filed: August 31, 2017

Most respectfully, I write separately because I am troubled by the implications of the Majority's opinion regarding probable cause and the lack of particularity in the search warrant. We should not condone a warrant authorizing police to search the entirety of a cell phone absent any temporal limitation on the information to be searched. A warrant of such generality raises the same concerns our Framers sought to address by crafting the Fourth Amendment. *See Riley v. California*, 134 S. Ct. 2473, 2494 (2014). I concur in the judgment because I conclude that the good faith doctrine of *United States v. Leon*, 468 U.S. 897 (1984) applies.

## PROBABLE CAUSE

I incorporate by reference, my concurrence in *Stevenson v. State*, __ Md. __ (2017). As I wrote in that case, I would not find probable cause where a warrant affidavit cites only an officer's training and experience, yet fails to show any nexus between the suspect's phone and criminal activity.

## PARTICULARITY

The affidavit Sergeant Zimmerman prepared asked to seize and search "any and all electronic data processing and storage devices located in the above-described cellular telephone," "[a]ny phone call records," "any text mail 'messages' sent or received," "any stored, un-stored, unsorted phone numbers on these devices," "any photographs stored on these devices," and "any external memory devices used on these devices . . . ."[1] The affiant did not specify a date range for the data to be searched, although the affidavit does identify

---

[1] Presumably, this refers to flash drives, external hard drives, or even cloud access.

when the incident leading to Petitioner's arrest occurred. Likewise, the warrant issued by the District Court for Garrett County does not prescribe any temporal limitation regarding the information to be searched. The warrant in *Stevenson v. State*, ___ Md. ___ (2017), at least limited the information to be searched to pictures, movies, and electronic communication stored during an eighteen-hour period.[2] For that reason, I have no concerns regarding the particularity of that warrant.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As the Supreme Court pointed out in *Riley*, "the Fourth Amendment was the founding generation's response to the reviled 'general warrants' . . . which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." 134 S. Ct. at 2494. The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Although neither the Petitioner nor the Majority addressed this issue, I address it because of the disquieting consequences of permitting overly broad searches. *See also* Adam M. Gershowitz, *The Post*-Riley *Search Warrant: Search Protocols and Particularity in Cell Phone Searches*, 69 Vand. L. Rev. 585, 601–06 (2016) (exploring how search warrants for "all data" on cell phones are overbroad and lack particularity).

---

[2] The warrant in *Stevenson* authorized police to search for only information "stored . . . from 1600 hours on 22 July 2015 to 1000 hrs on 23 July 2015 . . . ."

The search permitted by the warrant in this case is overly broad. This Court has explained that "constitutional and statutory provisions demand that a search warrant shall contain a description of the premises to be searched definite enough to prevent any unauthorized and **unnecessary invasion** of the rights of privacy." *Saunders v. State*, 199 Md. 568, 572 (1952) (emphasis added). Cell phones may contain "[t]he sum of an individual's private life . . . ." *Riley*, 134 S. Ct. at 2489. Therefore, temporal limitations on data searches may be essential to satisfy the particularity requirement of the Fourth Amendment. Although the affiant knew when the alleged CDS distribution occurred, the warrant authorized him to search through every scrap of data on Petitioner's phone. This includes any "external memory devices"—presumably including any cloud storage—regardless of the temporal proximity to criminal conduct justifying the search. I would not read the Fourth Amendment, and its particularity requirement, to allow such a warrant.

## CONCLUSION

Police officers already capably draft search warrant affidavits for a range of property such as cars, houses, and other personal effects. They can do so for cell phones as well. I would require that, at a minimum, a search warrant for a cell phone should contain a temporal limitation to prevent the "unnecessary invasion of the rights of privacy." *Saunders*, 199 Md. at 572. To permit otherwise would sanction search warrants lacking particularity. I would affirm the Court of Special Appeals' determination that the photographs and videos recovered from Petitioner's phone were admissible under the good faith exception. *See United States v. Leon*, 468 U.S. 897 (1984).

Judge Greene has authorized me to state that he joins this Concurring Opinion.

3