Concurring Opinion by
Adkins, J.,
which Greene, J., joins.
I agree with the Majority’s holding that the good faith exception to the Fourth Amendment exclusionary rule applies in this case, and the search should be upheld on that basis. Most respectfully, I write separately because I am troubled by the implications of the Majority’s holdings in both Stevenson v. State, 455 Md. 709, 168 A.3d 967 (2017), and Moats v. State, 455 Md. 682, 168 A.3d 952, 2017 WL 3764567 (2017), regarding probable cause to search cell phones.[1]1 fear that the Majority has paved the way for law enforcement to search a cell phone without a nexus between the criminal activity and the phone to be searched. We should not apply Riley v. California, — U.S. *734 -, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), a decision protecting the privacy interest of individuals in their phones, to prop up a warrant based almost exclusively on the police officer’s training and expertise—rather than facts.
PROBABLE CAUSE
In Riley, a unanimous Supreme Court held that law enforcement officers must obtain a warrant before searching a cell phone. Id. at 2485. In reaching that decision, the Court pointed out that cell phones, when compared with objects customarily found on an arrestee’s person, “differ in both a quantitative and a qualitative sense .... ” Id. at 2489. The modern cell phone has a significant impact on individual privacy because of storage capacity, the variety of information, and the “pervasiveness” of cell phones. Id. at 2489-90. The Chief Justice explained that an individual without a cell phone is the exception—the rule appears to be that people carry “a cache of sensitive personal information with them” nearly everywhere at all times. Id. at 2490. The fact that the data and information on a phone can “form a revealing montage of the user’s life” supported the conclusion that permitting warrant-less searches of cell phones would jeopardize the privacy interests of the majority of the United States’ population. Id. at 2490-91. The Court analogized cell phones to homes, explaining that
[A] cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.
Id. at 2491 (emphasis in original).
Chief Justice Roberts emphasized that technological advances do not alter the fundamental principles and protections of the Fourth Amendment. “The fact that technology now allows an individual to carry such information in his hand does *735 not make the information any less worthy of the protection for which the Founders fought.” Id. at 2495. To search a cell phone, law enforcement is required to obtain a warrant supported by probable cause.
Probable cause requires an assessment, based on the totality of the circumstances, of whether “there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). There must be a “nexus between criminal activity and the place to be searched.” Agurs v. State, 415 Md. 62, 84, 998 A.2d 868 (2010). Given the totality of the circumstances, I cannot conclude that a substantial basis for a warrant existed in either of these cases.
In Stevenson, the Appellant, Timothy Stevenson, assaulted and robbed David Pethel on July 22, 2015. The next day he attempted to assault and rob another individual. Officers arrested Stevenson, and discovered items belonging to Pethel on his person. Stevenson also had a cell phone in his possession when he was arrested, which he told officers was his own. Detective Houseman sought a warrant to search Stevenson’s phone based on these facts. In his affidavit, Houseman explained that “[i]t is through my knowledge and experience that suspects in robberies and assaults will sometimes take pictures, videos and send messages about their criminal activities on their cellular phones.” (Emphasis added.)[2]
The Majority reasons that Houseman’s affidavit, Stevenson’s admission that he assaulted Pethel, and the Supreme Court’s recognition of the pervasiveness of cell phones provided a “substantial basis” for a judge to conclude that Stevenson’s cell phone contained evidence connecting him to the crime. Stevenson, 455 Md. 727-29, 168 A.3d 967. But Houseman did not allege facts permitting inferences that Stevenson *736 had a co-participant, had communicated with others about the robbery, or had photographed his victim.
In Moats, the Petitioner, Timothy Moats, was arrested on drug-related charges. Officers were also investigating a sexual assault. The drug charges arose from an incident that occurred two weeks before Moats’s arrest. Moats provided marijuana and Suboxone to other teenagers in a car on the way to a party. One of the individuals in the car, A.D.C., alleged that she had been sexually assaulted that evening at the party, but could not remember where the party was, nor who assaulted her. Sergeant Zimmerman interviewed the other teenagers in the car, who corroborated this account of distribution. Moats had his cell phone with him when he was arrested. Zimmerman sought a warrant to search Moats’s cell phone based on these facts, and his “training and experience” that “individuals who participate in such crimes communicate via cellular telephones, via text messages, calls, emails, etc.”
As in Stevenson, the Majority in Moats reasons that the facts set forth in the affidavit, the prevalence of cell phones, the data contained in cell phones, and the “particulars of the events” leading to Moats’s arrest, provide a substantial basis to conclude that probable cause existed. Moats, 455 Md. at 703, 168 A.3d 952. To be sure, the “crime of drug distribution involves at least two participants id. at 703, 168 A.3d 952, but there are no references to phone communications in the specific events leading up to Moats’s arrest. Moats gave the drugs in person to his friends while driving to a party. Nor are there any facts surrounding the alleged sexual assault that indicate that anyone used a phone to document or communicate about the assault. The affidavit does not allege any facts suggesting that Moats was engaged in broader drug distribution activities.
In both of these cases, the Majority fails to offer an explanation for why these facts provide a sufficient nexus between the crimes and the likelihood that evidence would be found on the arrestees’ phones. Neither of the affiants provided an articulable reason to believe that either arrestee had *737 used Ms phone in the commission of the crime, or had evidence of the crime on his phone. The affiants relied only on their general experience that individuals who commit these crimes communicate by cell phone through text messages, calls, and emails. The affiants’ experience, absent any factual basis to support the inference that the arrestees’ cell phones were connected to the crimes, cannot suffice as probable cause. The Majority opinion, with its emphasis on officer experience, can readily be interpreted to mean that as long as an officer has sufficient experience in investigation, his belief that a cell phone contains pertinent evidence is sufficient to support a warrant. An officer’s training and experience cannot substitute for an “evidentiary nexus” between the place to be searched and criminal activity suspected. United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994).
Although it mentions that the nature of the crime should be considered, the Majority simply uses the ubiquitous nature of cell phones to support the magistrate’s finding of probable cause. Stevenson, 455 Md. at 727-29, 168 A.3d 967; Moats, 455 Md. at 702-04, 168 A.3d 952. A statement that criminals tend to use phones in crimes provides support, according to the Majority, for a warrant—even if the crime at issue is unconnected to use of a cell phone. Stevenson, 455 Md. at 727, 168 A.3d 967; Moats, 455 Md. at 701-03, 168 A.3d 952.
The Majority relies on the following quotation from the Supreme Court in Riley.
[I]t is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate. ... A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form ....
Stevenson, 455 Md. at 726, 168 A.3d 967 (quoting Riley, 134 S.Ct. at 2490-91). The Supreme Court, however, also explained—in that same discussion—that “allowing police to scrutinize such records on a routine basis is quite different *738 from allowing them to search a personal item or two .... ” Riley, 134 S.Ct. at 2490. Clearly, the Supreme Court intended to highlight the substantial threat to individual privacy if law enforcement officers could search cell phones without a warrant supported by probable cause, not to provide the primary factual basis to support a warrant in all but the most minor of crimes.
In Riley, the Supreme Court drew parallels between cell phones and houses, and acknowledged that the information contained in a cell phone may be just as substantial as that typically found in a house. Riley, 134 S.Ct. at 2491. Although the Court did not explicitly say so, it appears that the Justices considered phones at least as worthy of protection as homes. For that reason, it is instructive to look to Maryland precedent addressing warrants to search suspects’ homes.
To obtain probable cause to search a suspect’s home, “mere observation, documentation, or suspicion of a defendant’s participation in criminal activity will not necessarily suffice by itself, to establish probable cause that inculpatory evidence will be found in the home.” Holmes v. State, 368 Md. 506, 523, 796 A.2d 90 (2002). Officers need not supply direct evidence. Instead “probable cause may be inferred from the type of crime, the nature of the items sought, the opportunity for concealment, and reasonable inferences about where the defendant may hide the incriminating items.” Id. at 522, 796 A.2d 90. In Agurs, this Court relied on Holmes and State v. Coley, 145 Md.App. 502, 805 A.2d 1186 (2002) to “establish relevant principles” to determine when a sufficient nexus exists to search a suspect’s home. Agurs, 415 Md. at 86-88, 998 A.2d 868. Here, the affiants provided no support, other than their training and experience, for the statement that the arrestees used their phones in the commission of a crime, or that the phones contained evidence of a crime. This is precisely the lack of nexus that this Court and the Court of Special Appeals have condemned as impermissible to support probable cause for a search warrant.[3]
*739 In Coley, the Court of Special Appeals explained that “Maryland ... has explicitly rejected th[e] notion” that there is probable cause to believe that drug dealers will keep contraband and records of transactions in their homes. 145 Md.App. at 527 n.18, 805 A.2d 1186. As we explained in Agurs, while officers may draw reasonable inferences that evidence may be found in a location, “there must be facts shown from which this reasonable inference can be drawn.” 415 Md. at 87, 998 A.2d 868 (emphasis added). Facts that connect a suspected drug dealer to his home at the time of drug transactions permit that inference. Id. We have not adopted a rule that probable cause to search a home exists because drug dealers tend to keep drugs in their home. We should not adopt a rule that translates that rationale to phones.
The Majority offers a slim exception to its holding. It suggests that in some cases “the nature of the crime will not support a warrant to search the suspect’s cell phone .... ” Moats, 455 Md. at 705, 168 A.3d 952. But the only examples given are “traffic offenses, public nuisance crimes, and the like.” Id. This exception creates an amorphous, but seemingly narrow standard in which I cannot find a limiting principle.
Other jurisdictions require more to connect a cell phone to a crime before finding probable cause to issue a warrant to search the phone. In Commonwealth v. White, 475 Mass. 583, 59 N.E.3d 369 (2016), the Supreme Judicial Court of Massachusetts concluded that “probable cause to search or seize a person’s cellular telephone may not be based solely on an officer’s opinion that the device is likely to contain evidence of the crime under investigation .... ” Id. at 371-72. Detectives had seized the suspect’s phone because they had reason to believe the defendant had participated in a crime, and their training and experience suggested the device might contain relevant evidence. Id. at 376.
*740 The Massachusetts Supreme Judicial Court explained that this connection alone could not satisfy the nexus requirement. Relying upon Massachusetts precedent, the court concluded that even if probable cause to suspect the defendant committed a crime exists, officers may not search or seize a cell phone unless they have “information establishing the existence of particularized evidence likely to be found there.” Id. The court rejected the inference that because phones are commonly used, they contain evidence. It reasoned that if that inference was sufficient for probable cause “it would be a rare case where probable cause to charge someone with a crime would not open the person’s cellular telephone to seizure and subsequent search.” Id. at 377 (citing Riley, 134 S.Ct. at 2492).
The “particularized evidence” standard that the Massachusetts Supreme Judicial Court set may be too high. I do not suggest that officers must be able to identify the specific information they seek. But judges should not issue warrants to search cell phones that may contain exhaustive details of an individual’s life simply because criminals in other cases have sometimes used cell phones in the commission of crimes. Officers relying on specific facts of a crime to support an affidavit should be able to point to facts that support a reasonable inference that evidence may be found on a suspect’s cell phone.
Federal court cases have also required a link between the phone and the crime to justify probable cause. See United States v. Ramirez, 180 F.Supp.3d 491, 495 (W.D. Ky. 2016) (suspect’s possession of a phone at the time of arrest for drug conspiracy does not by itself establish a sufficient nexus between the phone and alleged criminal activity); see also United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015) (sufficient nexus existed when suspect and co-conspirators used their phones to communicate during fraudulent activities and suspect was using his phone before arrest to alert co-conspirators); Mathis v. United States, 767 F.3d 1264, 1276 (11th Cir. 2014) (probable cause existed because affiants showed evidence of communications between suspect and alleged victim on the suspect’s phone).
*741 The Supreme Court has explained that “probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts .... ” Gates, 462 U.S. at 232, 103 S.Ct. 2317 (emphasis added). But probabilities require a footing in facts. Although “common-sense conclusions about human behavior” are relevant to determining when probable cause exists, see id. at 231-32, 103 S.Ct. 2317, they should not be the sole criteria for assessment. Before a judge authorizes a warrant to search a cell phone, there should be a factual context that makes it probable that the suspect’s phone has been used in a crime, or that evidence of the crime may be found on the phone.
CONCLUSION
Riley does not address what constitutes probable cause sufficient to obtain a warrant to search a cell phone. I cannot, however, conclude that it is appropriate for this Court to apply Riley to permit warrants based primarily on an officer’s training and expertise without the necessary facts to support a reasonable inference that the suspect has used his phone in the commission of a crime or that the phone contains evidence of the crime.
Judge Greene has authorized me to state that he joins this Concurring Opinion.

. I have discussed an additional concern regarding Moats v. State, 455 Md. 682, 168 A.3d 952, 2017 WL 3764567 (2017), in a separate concurring opinion accompanying that case.

. Houseman’s warrant affidavit requested data on Stevenson’s phone stored during an eighteen-hour period, "from 1600 hours on 22 July 2015 to 1000 hrs on 23 July 2015.” This request was appropriately tailored to the circumstances of the crime of arrest. The warrant incorporated the affidavit.

. I in no way discount the extensive training and experience of our State’s law enforcement officers. Our officers are extremely capable. *739 For that reason, I do not doubt their ability to provide magistrates with additional facts that draw a nexus between a phone and suspected criminal activity.